IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN KIKER, Individually and as Natural Parent and Guardian of C.S., a Minor<br><br>Plaintiffs,<br><br>v.<br><br>SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE LLC<br><br>Defendant. | CIVIL ACTION<br>NO. 14-1445 |

## OPINION

**Slomsky, J.**                                                          **October 1, 2014**

## I.     INTRODUCTION

Before the Court is the Motion to Transfer Venue to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a) filed by Defendant GlaxoSmithKline LLC, formerly SmithKline Beecham Corporation d/b/a GlaxoSmithKline. (Doc. No. 11.)

On March 11, 2014, Plaintiffs Kathryn Kiker and C.S., a minor, filed a Complaint against Defendant in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 1.)  In the Complaint, Plaintiffs allege that C.S. was born with severe birth defects because his mother, Kathryn Kiker, ingested Paxil, a prescription medication manufactured and marketed by Defendant, during her pregnancy with C.S.  (Id. at 1.)  Plaintiffs seek damages from Defendant for C.S.'s personal injuries and Mrs. Kiker's resulting emotional distress.  (Id.)

Specifically, Plaintiffs assert thirteen causes of action against Defendant: (1) negligence, (2) negligence per se, (3) negligent pharmaco-vigilance, (4) strict liability, (5) failure to warn, (6) breach of express warranties, (7) breach of implied warranties, (8) fraud, (9) negligent

infliction of emotional distress, (10) negligent design, (11) negligent misrepresentation, (12) violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, and (13) a request for punitive damages. (Id. at 7–22.)

On May 22, 2014, Defendant filed the Motion to Transfer Venue, contending that the public and private interest factors set forth in Jumara v. State Farm Insurance Co., 55 F.3d 873 (3d Cir. 1995), support transfer to the United States District Court for the Southern District of Ohio. (Doc. No. 11-2 at 4-5.) On June 4, 2014, Plaintiffs filed their Brief in Opposition to Defendant's Motion to Transfer Venue. (Doc. No. 19.) On June 9, 2014, Defendant filed its Reply. (Doc. No. 20.) On July 14, 2014, a hearing was held on the Motion. (Doc. No. 32.) On July 25, 2014, Defendant filed a Motion for Leave to File a Notice of Supplemental Authority in Support of Its Motion to Transfer Venue.[1] (Doc. No. 34.) On July 29, 2014, Plaintiffs filed their Response to this Motion. (Doc. No. 35.)

The central issue in dispute is whether the Jumara factors support transfer. For reasons that follow, Defendant's Motion to Transfer Venue to the United States District Court for the Southern District of Ohio will be granted.

## II.     BACKGROUND

Defendant is a Delaware limited liability corporation that manufactured, distributed, and marketed the prescription medication Paxil,[2] which has been approved by the United States Food and Drug Administration ("FDA") for use in the treatment of depression, among other conditions. (Doc. Nos. 8 at 2; 11-2 at 5.)

---

[1] Defendant's Motion for Leave to File a Notice of Supplemental Authority was granted. (Doc. No. 36.) Defendant submitted Gibson v. SmithKlineBeecham Corp., No. 14-1539, slip op. (E.D. Pa. July 21, 2014) as its supplemental authority. This decision has been considered in deciding Defendant's Motion to Transfer Venue.

[2] Paxil is the brand name for paroxetine hydrochloride.

Plaintiffs Kathryn Kiker and C.S. are residents of Columbus, Ohio.  (Doc. No. 1 at 2.)
Mrs. Kiker took Paxil as prescribed by her treating physician while she was pregnant with C.S.
in Hilliard, Ohio.  (Id. at 2–3.)  On March 14, 2001, Mrs. Kiker gave birth to C.S., who, since
birth, has suffered from conditions known as infant respiratory distress syndrome and ventricular
septal defect.  (Id.)

## III.    STANDARD OF REVIEW

Defendant has moved to transfer this matter to the United States District Court for the
Southern District of Ohio.  A district court may transfer a case pursuant to 28 U.S.C. § 1404(a)
"for the convenience of parties and witnesses, in the interest of justice" to "any other district or
division where it might have been brought or to any district or division to which all parties have
consented."

A moving party seeking to transfer a case bears the burden of establishing that: (1) venue
is proper in the transferee forum; (2) transfer is more convenient for the parties and witnesses;
and (3) transfer would be in the interest of justice.  Lehr v. Stryker Corp., No. 09-2989, 2010 WL
3069633, at *3 (E.D. Pa. Aug. 4, 2010).  While there is ordinarily a strong presumption in favor
of a plaintiff's choice of forum, a court has "broad discretion to determine, on an individualized,
case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."
Jumara, 55 F.3d at 883; see also Hollander v. Hospira, Inc., No. 10-235, 2010 WL 4751669, at *3
(E.D. Pa. Nov. 22, 2010) (granting a motion to transfer because justice was best served by
transfer); Inaganti v. Columbia Props. Harrisburg, LLC, No. 10-1651, 2010 WL 2471671, at *2
(E.D. Pa. June 15, 2010) (recognizing that § 1404(a) transfer analysis is flexible and must be
determined on the unique facts of each case).

The burden is on the moving party to show that "all relevant things considered, the case would be better off transferred to another district." In re United States, 273 F.3d 380, 388 (3d Cir. 2001) (internal quotation marks and citation omitted).

In Jumara, the Third Circuit set forth "private interest" and "public interest" factors that a district court may consider in deciding a motion to transfer. 55 F.3d at 879-80. First, the "private interests" established in Jumara include:

> [P]laintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. at 879 (internal citations omitted). Second, the "public interests" discussed in Jumara include:

> [T]he enforceability of the judgment, practical considerations that could make the trial easy, expeditious or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (internal citations omitted).

## IV. ANALYSIS

The Court's analysis of whether to transfer this case to the United States District Court for the Southern District of Ohio will proceed in two parts. First, the Court must determine whether the case could have originally been brought in the Southern District of Ohio. See 28 U.S.C. § 1404(a). Second, if venue in the Southern District of Ohio is proper, the Court must, as explained in Jumara, "'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by

transfer to a different forum.'"  55 F.3d 873 (quoting 15 Charles Alan Wright & Arthur R. Miller, et al., Federal Practice and Procedure § 3847 (4th ed. 2014)).

### A.  Venue Is Proper in the Southern District of Ohio

Pursuant to 28 U.S.C. § 1404(a), a case may only be transferred to "any other district or division where it might have been brought or to any district or division to which all parties have consented."  Since the parties have not agreed to transfer this case to the Southern District of Ohio, the Court must determine whether this case could have originally been brought in that venue.

According to 28 U.S.C. § 1391(b), a civil action may be brought in:

(1) A judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) A judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) If there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Here, the parties do not dispute that this case could have originally been brought in the Southern District of Ohio because, pursuant to 28 U.S.C. § 1391(b)(2), it is a "judicial district in which [a] substantial part of the events or omissions giving rise to the claim occurred." (Doc. No. 19 at 3.)

According to the Complaint, Mrs. Kiker allegedly took Paxil as prescribed by her treating physician while pregnant with C.S. in Hilliard, Ohio.  (Doc. No. 1 at 3.)  In addition, both Mrs. Kiker and C.S. are currently residents of Columbus, Ohio, where they continue to suffer the injuries alleged in the Complaint.  (Id. at 2.)  Both Columbus and Hilliard are located in Franklin County, Ohio, which is within the jurisdiction of the United States District Court for the

Southern District of Ohio.  (Doc. No. 11-2 at 2.)  Venue in the Southern District of Ohio is therefore proper because it is a place where "a substantial part of the events or omissions giving rise to the claim occurred."  <u>See</u> 28 U.S.C. § 1391(b)(2).

### B.  <u>Jumara</u> Factors

Having determined that venue in the Southern District of Ohio is proper, the Court will consider whether the factors laid out by the Third Circuit Court of Appeals in <u>Jumara</u>, 55 F.3d 873, support transfer "for the convenience of the parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  Each of the relevant or disputed <u>Jumara</u> factors is addressed below.

### 1.  Private Interest Factors

Under <u>Jumara</u>, there are six private interest factors.  55 F.3d at 879.  Each of these factors is either disputed by the parties or relevant to the Court's decision on Defendant's Motion.

### a)  Plaintiffs' Forum Preference

The first <u>Jumara</u> private interest factor is the forum preference of the plaintiff as manifested in the original choice of forum.  55 F.3d at 879.  In general, the "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'"  <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970) (quoting <u>Ungrund v. Cunningham Bros., Inc.</u>, 300 F. Supp. 270, 272 (S.D. Ill. 1969)).  However, this choice receives less deference when plaintiff files suit outside of plaintiff's home forum.  <u>See</u> <u>McCraw v. GlaxoSmithKline</u>, No. 12-2119, 2014 WL 211343, at *4 (E.D. Pa. Jan. 17, 2014); <u>McLaughlin v. GlaxoSmithKline, LLC</u>, No. 12-3272, 2012 WL 4932016, at *3 (E.D. Pa. Oct. 17, 2012).  A plaintiff's choice of forum is also given less weight "where none of the

operative facts of the action occur in the forum selected by the plaintiff." Nat'l Mortg. Network, Inc. v. Home Equity Ctrs., Inc., 683 F. Supp. 116, 119 (E.D. Pa. 1988).

Here, Defendant argues that Plaintiffs' choice of forum in the Eastern District of Pennsylvania should be accorded less deference because it is not Plaintiffs' home forum and the "operative facts relevant to [Plaintiffs'] cause of action took place in Ohio, not Pennsylvania." (Doc. No. 11-2 at 9-10.)  Plaintiffs concede that the Southern District of Ohio—not the Eastern District of Pennsylvania—is Plaintiffs' home forum, and that Mrs. Kiker was prescribed and took Paxil while pregnant with C.S. in Ohio.  (Doc. No. 1 at 2.)

Plaintiffs argue, however, that a number of operative facts did occur in the Eastern District of Pennsylvania.  (Doc. No. 19 at 4.)  They assert that Philadelphia, which is in the Eastern District of Pennsylvania, is the "nerve center" for Defendant's labeling, promotion, and distribution of Paxil; the site of one of Defendant's operational headquarters; where Defendant's document depository for Paxil is located; where a number of Defendant's scientists and other employees associated with Paxil live and work; and where crucial corporate decisions regarding Paxil were made.  (Id.)

Accepting Plaintiffs' assertions as true, the Court cannot agree with Defendant's contention that none of the operative facts underlying Plaintiffs' claims occurred in the Eastern District of Pennsylvania.  Even so, because this is not Plaintiffs' home forum, their choice will not be given "paramount consideration."  See McCraw, 2014 WL 211343, at *4; McLaughlin, 2012 WL 4932016, at *3.  Nevertheless, Plaintiffs' choice is still due some deference, and therefore it weighs against transfer.

**b)  Defendant's Forum Preference**

The second Jumara private interest factor is the forum preference of the defendant.  55 F.3d at 879.  Transfer should not be granted on the grounds of a defendant's forum preference where it would "merely shift the inconvenience from the defendant to the plaintiff."  Blue Ribbon Commodity Traders, Inc. v. Quality Foods Distrib., No. 07-4037, 2008 WL 269487, at *3 (E.D. Pa. Jan. 31, 2008) (quoting Aquarium Pharma., Inc. v. Indus. Pressing & Packaging, Inc., 358 F. Supp. 441, 446 (E.D. Pa. 1973)).

Here, it is evident that Defendant's forum preference is not motivated by a desire to shift inconvenience from Defendant to Plaintiffs.  In fact, as a corporation headquartered in Philadelphia (Doc. No. 11-2 at 6), keeping the case in the Plaintiffs' preferred forum of the Eastern District of Pennsylvania would likely be more convenient for Defendant.  In addition, transferring the case to the Southern District of Ohio, where Plaintiffs reside, would likely be more convenient for Plaintiffs.

As such, Defendant's forum preference will not "merely shift the inconvenience" from Defendant to Plaintiffs, and it therefore weighs in favor of transfer.

**c)  Where Claim Arose**

The third Jumara private interest factor requires a court to evaluate where the claim arose. 55 F.3d at 879.  "Typically, the most appropriate venue is determined by [this] factor."  McCraw, 2014 WL 211343, at *4.  In a products liability action involving a prescription drug—such as the instant case—the state with "'the most significant contacts and relationship to the liability issue is [the plaintiff's] home state,'" where the drug was prescribed, ingested, and allegedly caused injuries.  Blain v. SmithKline Beecham Corp., No. 06-1247, slip op. at 7 (E.D. Pa. Apr. 25, 2007) (quoting Blain v. SmithKline Beecham Corp., 240 F.R.D. 179, 193 (E.D. Pa. 2007)).

Defendant contends that this factor weighs strongly in favor of transfer because none of the operative facts of this case occurred in the Eastern District of Pennsylvania.[3]  (Doc. No. 11-2 at 12.)  Plaintiffs "did not reside in Pennsylvania, did not ingest Paxil in Pennsylvania, were not prescribed Paxil in Pennsylvania, were not allegedly injured in Pennsylvania, and did not receive medical treatment in Pennsylvania."  Id.  This activity, they argue, occurred in the Southern District of Ohio—where the case should be transferred.  Id. at 13.  Plaintiffs concede that, under the Jumara analysis, this factor weighs in favor of transfer.  (Doc. No. 19 at 6.)

The Court does not adopt Defendant's position that all of the operative facts of this case occurred in Ohio, because it is very likely that at least some decisions regarding Paxil took place at Defendant's headquarters in Philadelphia.  Nevertheless, it is clear that the most significant facts of this case occurred in Ohio, where the drug was prescribed, ingested, and allegedly caused injuries.  This factor, therefore, weighs heavily in favor of transfer.

---

[3] In support of its position, Defendant relies on several cases from this District which held that all the "operative facts" underlying a Paxil-related product liability case occurred "where the allegedly defective drug was ingested and the injury occurred."  McCraw, 2014 WL 211343, at *4; see also Guddeck v. SmithKline Beecham Corp., No. 13-3696, 2013 WL 4197085, at *3 (E.D. Pa. Aug. 14, 2013); McLaughlin, 2012 WL 4932016, at *4.  In a series of opinions granting motions to transfer venue in Paxil-related product liability cases, the Honorable Timothy Savage, a judge of this Court, held that "even though some of the decisions may have taken place in the Philadelphia area, 'the most significant contacts and relationship to the liability issue is [plaintiff's] home state.'"  Blain v. SmithKline Beecham Corp., No. 06-1247, slip op. at 7 (E.D. Pa. Apr. 25, 2007) (quoting Blain, 240 F.R.D. at 193); see also White v. SmithKline Beecham Corp., No. 06-3025, 2007 WL 1237952, at *4 (E.D. Pa. Apr. 26, 2007); Elwell v. SmithKline Beecham Corp., No. 06-3020, 2007 WL 1237957, at *4 (E.D. Pa. Apr. 25, 2007); Fisher v. SmithKline Beecham Corp., No. 06-3021, 2007 WL 1234845, at *4 (E.D. Pa. Apr. 25, 2007); Cunningham v. SmithKline Beecham Corp., No. 06-3022, slip op. at 8 (E.D. Pa. Apr. 25, 2007); Jaklevich v. SmithKline Beecham Corp., No. 06-3023, slip op. at 7 (E.D. Pa. Apr. 25, 2007).  Here, critical operative facts occurred in Ohio.  Regardless of whether all of them occurred in Ohio, the Jumara factor of where the claim arose still weighs heavily in favor of transfer.

### d)  Convenience of Parties

The fourth <u>Jumara</u> private interest factor is the convenience of the parties as indicated by their relative physical and financial condition.  55 F.3d at 879.  In this analysis, "convenience of counsel can only be considered as it relates to increased cost of litigation."  <u>Lehr v. Stryker Corp.</u>, No. 09-2989, 2010 WL 3069633, at *4 (E.D. Pa. Aug. 4, 2010) (Slomsky, J.) (citing <u>Media Group, Inc. v. Turtle Wax, Inc.</u>, No. 96-0234, 1996 WL 756760, at *7 (D. Del. Dec. 23, 1996)).

In this case, Defendant is a global company whose "employees with knowledge of the labeling and warnings concerning Paxil reside outside of Pennsylvania, including in the United Kingdom and North Carolina."  (Doc. No. 11-2 at 14.)  As such, Defendant states that trial in the Southern District of Ohio would be no more burdensome for it than trial in the Eastern District of Pennsylvania.  (<u>Id.</u>)

Plaintiffs are a mother and child who reside in the Southern District of Ohio. (Doc. No. 1 at 2.)  They argue that transfer to the Southern District of Ohio will increase their costs, making it more inconvenient for them to have trial there.  (Doc. No. 35 at 1.)  This argument is premised on the fact that Plaintiffs' counsel is involved in two multi-district litigations (MDLs) pending in the Eastern District of Pennsylvania, and therefore counsel could "coordinate depositions of [Defendant's] employees and former employees, hearings, document review, etc. in [this case] around his existing MDL commitments in this district."  (<u>Id.</u> at 1-2.)  Such efficiencies, Plaintiffs argue, would be lost by litigating this case in the Southern District of Ohio.[4]  (<u>Id.</u>)

---

[4] Plaintiffs are represented by, among other attorneys, R. Jason Richards of the law firm Aylstock Witkin Kreis & Overholtz, PLLC.  Their offices are located in Pensacola, Florida.  Richards is the attorney who argued on behalf of Plaintiffs at the hearing on the Motion to Transfer Venue

Plaintiffs' argument is not wholly persuasive.  By transferring this case to the Southern District of Ohio, Plaintiffs' counsel may lose the ability to coordinate hearings or trial in this case with other business it may have in this District on the MDLs, because any hearings or trial in this case will occur where the forum court is located.  Plaintiffs would therefore incur increased costs to the extent Plaintiffs' counsel must make independent trips to Ohio for hearings or trial.

Plaintiffs' counsel, however, will not lose the ability to coordinate depositions and document review in this case around existing MDL commitments in the Eastern District of Pennsylvania.  Under Federal Rule of Civil Procedure 45(c), the location of the forum court does not affect where a person can be compelled to attend a deposition[5] or produce documents.[6]  The provisions of this rule allow Plaintiffs to file a motion in a federal court to compel a nonparty person to attend a deposition within 100 miles of where that person resides, is employed, or regularly transacts business in person.  Fed. R. Civ. P. 45(c)(1)(A).  If the person is a party or a

---

on July 14, 2014.  Richards represented that he intends to stay in the case (Doc. No. 33 at 32:22-33:4), and the Court presumes that Plaintiffs' argument that their costs would increase if the case were transferred to the Southern District of Ohio is based on Richards's need to make independent trips from Florida to Ohio should the case be transferred there.

[5] Federal Rule of Civil Procedure 45(c)(1) states that a person can be commanded by subpoena to attend a trial, hearing, or deposition only as follows:

    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

    (B) within the state where the person resides, is employed, or regularly transacts business in person if the person
        i. is a party or a party's officer; or
        ii. is commanded to attend a trial and would not incur substantial expense.

[6] Federal Rule of Civil Procedure 45(c)(2) states that a subpoena may command:

    (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business . . . .

11

party's officer, Plaintiffs can follow the same procedure to compel the person to attend a deposition anywhere within the state where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(B)(i). Pursuant to Federal Rule of Civil Procedure 45(c)(2)(A), Plaintiff can also file a motion in a federal court to compel the production of "documents, electronically stored information, or other tangible things" at a place within 100 miles of where the person resides, is employed, or regularly transacts business.

These rules govern regardless of whether this case remains in the Eastern District of Pennsylvania or is transferred to the Southern District of Ohio. The location of the forum court does not dictate where a person can be compelled by subpoena to be deposed or produce documents.

Plaintiffs, therefore, will not incur additional costs related to depositions or document review if this case is transferred to the Southern District of Ohio. Any depositions or document production that Plantiffs can compel Defendant to do in this District can still be coordinated with counsel's MDL commitments in this District.

In sum, should venue be transferred to the Southern District of Ohio, Plaintiffs' costs will only increase to the extent Plaintiffs' counsel will have to make independent trips to Ohio for hearings or trial. Plaintiffs themselves, however, would save costs by not having to travel from Ohio to Pennsylvania for trial. Therefore, any increased costs that Plaintiffs would incur by litigating in the Southern District of Ohio instead of the Eastern District of Pennsylvania, though difficult to determine, would likely be negligible.

Because (1) Plaintiffs will not clearly incur increased costs, (2) venue in the Southern District of Ohio will be more convenient for the Plaintiffs themselves, and (3) venue in the

Southern District of Ohio will be no more burdensome for Defendant than venue in the Eastern District of Pennsylvania, this factor tips slightly in favor of transfer.

### e)  Convenience of Witnesses

The fifth <u>Jumara</u> private interest factor concerns the location of witnesses, but only to the extent that witnesses may actually be unavailable for trial.  55 F.3d at 879.  The convenience of party witnesses or witnesses employed by a party is given minimal weight in this analysis because parties are obligated to produce the attendance of themselves and their employees.  <u>Snyder v. Bertucci's Rest. Corp.</u>, No. 12-5382, 2012 WL 6601384, at *3 (E.D. Pa. Dec. 18, 2012).  Consequently, the convenience of key nonparty witnesses and, more importantly, the ability to compel them to testify in person at trial, is the main focus of this factor.  The party seeking transfer must only provide enough information about proposed witnesses and their expected testimony "to enable the District Court to balance the parties' interests."  <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 258 (1981).  Extensive detail is not necessary.  <u>Id.</u>

In this case, Defendant argues that this factor weighs heavily in favor of transfer because Plaintiffs' prescribing and treating physicians, who would be critical nonparty witnesses, reside in Ohio and are thus outside the subpoena power of this District under Federal Rule of Civil Procedure 45(c)(1).  (Doc. No. 11-2 at 15.)  These witnesses are, however, within the subpoena power of the Southern District of Ohio.  As such, Defendant would be able to compel the live testimony of these physicians at trial in the Southern District of Ohio, but not in the Eastern District of Pennsylvania.  Defendant submits that the testimony of Mrs. Kiker's prescribing physician, for instance, "is necessary to establish why the physician decided to prescribe Paxil to Mrs. Kiker during her pregnancy with C.S. and what impact, if any, a change to the Paxil warnings would have had on that decision."  (Doc. No. 20 at 5.)

13

Plaintiffs present two arguments in support of their contention that this factor should be neutral.  First, Plaintiffs argue that Defendant has failed to meet its burden to (1) clearly identify potential witnesses who would actually be unavailable if trial were held in this District, and (2) identify what their testimony would be.  These deficiencies, Plaintiffs assert, "are fatal to [Defendant's] motion."[7]  (Doc. No. 19 at 6-7) (citing Reyno v. Piper Aircraft Co., 630 F.2d 149, 161 (3d Cir. 1980); Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756–57 (3d Cir. 1973); Ashton v. Knight Transp., Inc., No. 09-0759, 2009 U.S. Dist. LEXIS 68586, at *12 (N.D. Tex. Aug. 6, 2009); Rosen v. Fidelity Fixed Income Trust, No. 95-2365, 1995 U.S. Dist. LEXIS 13877, at *13 (E.D. Pa. Sept. 18, 1995); Austin v. Johns-Manville Corp., 524 F. Supp. 1166, 1169 (E.D. Pa. 1981)).  Second, Plaintiffs contend that they would be unable to compel the testimony of Defendant's former employees who have knowledge of Paxil if trial were held in the Southern District of Ohio.  Since these nonparty witnesses would be critical to Plaintiffs' case, Plaintiffs argue that transfer to the Southern District of Ohio would simply shift the problem of being unable to compel critical nonparty witnesses to testify at trial from one party to the other.  (Doc. No. 33 at 31.)  The Court is not persuaded by either of Plaintiffs' arguments.

As to Plaintiffs' first argument, the Court believes that Defendant has met its burden to clearly identify both the potential witnesses it would not be able to compel to testify in this

_____

[7] A Third Circuit case Plaintiffs rely on for this point, Reyno, 630 F.2d 149, has been overruled by the Supreme Court.  See Piper Aircraft, 454 U.S. 235.  In its opinion, the Supreme Court expressly rejected the Third Circuit's holding that a party seeking forum non conveniens dismissal "must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum."  Id. at 258.  The Court held that "such detail is not necessary," and the moving party need only provide "enough information to enable the District Court to balance the parties' interests."  Id.  If such detail is not necessary to support a forum non conveniens motion, it cannot be necessary to support a transfer of venue motion pursuant to § 1404(a) since "[d]istrict courts were given more discretion to transfer under § 1404(a) than they had to dismiss on the grounds of forum non conveniens."  Id. at 253.

forum and the expected content of their testimony.  Defendant is not required, as Plaintiffs contend, to name these witnesses nor detail their expected testimony.  See Piper Aircraft, 454 U.S. at 258.   It only must provide sufficient information for the Court to balance the parties' interests.  Id.  Here, the Court is persuaded that Defendant has met this burden by identifying these witnesses as Plaintiffs' treating and prescribing physicians and explaining, in general, the importance of their testimony to this case.

Plaintiffs' second argument is also unavailing.  There may be former employees of Defendant who Plaintiffs could compel to testify in the Eastern District of Pennsylvania but not the Southern District of Ohio.  However, the reverse may also be true.  In addition, Plaintiffs may not be able to compel the testimony of these individuals in either forum.[8]  In any case, Plaintiffs have not provided any information showing that they would be prejudiced by their inability to call certain of Defendant's former employees if venue is transferred to the Southern District of Ohio.  As such, the Court finds this argument largely speculative.

In sum, Defendant has met its burden of showing that this Jumara factor weighs in favor of transfer because critical nonparty witnesses could be subpoenaed to testify at trial in the Southern District of Ohio but not the Eastern District of Pennsylvania.  Plaintiffs' arguments do not convince this Court otherwise.  Therefore, this factor weighs in favor of transfer.

### f)  Location of Books and Records

The sixth Jumara private interest factor is the location of books and records.  This factor is only relevant to the extent that books and records could not be produced in the alternative

---

[8] Defendant represents that "employees with knowledge of the labeling and warnings concerning Paxil reside outside of Pennsylvania, including in the United Kingdom and North Carolina." (Doc. No. 11-2 at 14.)  Therefore, if these persons are no longer employees of Defendant but still live in North Carolina or the United Kingdom, neither party may have the ability in either forum to compel them to testify at trial.

forum.  Jumara, 55 F.3d at 879.  In addition, "[t]he technological advances of recent years have significantly reduced the weight of [this factor] in the balance of convenience analysis." Lomanno v. Black, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003).  "[T]he electronic nature of modern discovery makes document production possible in either for[um]."  Lehr, 2010 WL 3069633, at *6.

Here, Plaintiffs claim that, "to the extent this factor is relevant at all," it weighs against transfer because Defendant's document depository for Paxil is located in Philadelphia. (Doc. No. 19 at 7-8.)

Defendant, though, asserts that this factor is neutral because (1) the location of Defendant's documents is irrelevant because Federal Rule of Civil Procedure 34 entitles Plaintiffs to compulsory discovery of Defendant's documents regardless of where they are located; (2) Defendant has already produced over one million pages of relevant documents to Plaintiffs' counsel because Plaintiffs' counsel was involved in a prior Paxil-related birth defect litigation, and the parties have agreed that those documents can be deemed produced in the instant case; and (3) Defendant's document depository for Paxil is located in Atlanta, not Philadelphia as Plaintiffs allege.  (Doc. No. 20 at 6-7.)

Neither party claims that documents could not be produced in either forum.  Because this Jumara factor is only relevant to the extent that documents cannot be produced in the alternative forum, see 55 F.3d at 879, this factor is neutral.

### 2.  Public Interest Factors

Under Jumara, there are six public interest factors.  The parties and the Court agree that three of them are neutral and should be given no weight in the Court's analysis.  They are: (1) practical considerations that could make trial easy, expeditious, or inexpensive; (2) the

enforceability of the judgment; and (3) the public policies of the fora.  The disputed factors will be discussed below.

### a)  Court Congestion

Defendant argues—and Plaintiffs concede—that the Southern District of Ohio has a lighter case load than the Eastern District of Pennsylvania, and therefore this factor weighs in favor of transfer.  (Doc. Nos. 11-2 at 19; 19 at 8.)  Defendant cites Federal Judicial Caseload Statistics showing that, for the period ending March 2013, the Southern District of Ohio had 2,588 pending cases while the Eastern District of Pennsylvania had 12,963.  (Doc. No. 11-2 at 19.)  A previous opinion of this Court, though, notes that "the Eastern District of Pennsylvania's high number of cases arises out of its large number of multi-district litigations and does not indicate that it is significantly more congested."  Hamilton v. Nochimson, No. 09-2196, 2009 WL 2195138, at *4 n.1 (E.D. Pa. July 21, 2009).

Regardless of the significance of these statistics, this Court has not had a problem scheduling additional cases.  Therefore, this factor is neutral.

### b)  Local Interest

This Jumara factor weighs the interest that each forum has in adjudicating the case. "When an action involves injuries sustained in a particular locale, the public interest supports adjudication of the controversy in that locale."  McCraw v. GlaxoSmithKline, No. 12-2119, 2014 WL 211343, at *6 (E.D. Pa. Jan. 17, 2014) (citing In re Eastern Dist. Repetitive Stress Injury Litig., 850 F. Supp. 188, 195 (E.D.N.Y. 1994)).  In particular, "states have a strong interest in ensuring that their residents are protected from out-of-state corporations," especially those that provide medical care.  Id. (citing Zubyk v. LPBOC Hotel Ltd. P'ship, No. 00-971, 2000 WL 963168, at *11 (E.D. Pa. June 27, 2000)).  Generally, a state's interest in protecting its citizens

from out-of-state corporations outweighs another state's interest in regulating corporations within its borders.  See Blain v. SmithKline Beecham Corp., 240 F.R.D. 179, 194 (E.D. Pa. 2007) (noting that "the foreign state's interest in protecting its citizens outweighs Pennsylvania's regulatory concerns").

Defendant argues that Ohio has a far stronger interest than Pennsylvania in deciding this case because Plaintiffs' injuries were sustained in Ohio.  (Doc. No. 20 at 7.)  Plaintiffs respond that Defendant was a Pennsylvania corporation at the time Mrs. Kiker ingested Paxil, corporate decisions regarding Paxil were made in Pennsylvania, and Pennsylvania has a strong interest in regulating corporations that do business in the state.  (Doc. No. 19 at 9) (citing Kiser v. Conrail, No. 85-2011, 1985 U.S. Dist. LEXIS 16475, at *6 (E.D. Pa. Aug. 27, 1985); (Doc. No. 33 at 45:23-46:1).

This Court is persuaded by the opinions of several other courts in this District which held that a state's interest in protecting its citizens from foreign corporations outweighs a state's interest in regulating corporations within its borders.  See McCraw, 2014 WL 211343, at *7; Blain v. SmithKline Beecham Corp., No. 06-1247, slip op. at 12 (E.D. Pa. Apr. 25, 2007); White v. SmithKline Beecham Corp., No. 06-3025, 2007 WL 1237952, at *6 (E.D. Pa. Apr. 26, 2007); Elwell v. SmithKline Beecham Corp., No. 06-3020, 2007 WL 1237957, at *6 (E.D. Pa. Apr. 25, 2007); Fisher v. SmithKline Beecham Corp., No. 06-3021, 2007 WL 1234845, at *6 (E.D. Pa. Apr. 25, 2007); Cunningham v. SmithKline Beecham Corp., No. 06-3022, slip op. at 12-13 (E.D. Pa. Apr. 25, 2007); Jaklevich v. SmithKline Beecham Corp., No. 06-3023, slip op. at 12 (E.D. Pa. Apr. 25. 2007).  As such, this factor weighs in favor of transfer to Ohio, where Plaintiffs' alleged injuries occurred.

**c)  Familiarity of Trial Judge with Applicable State Law**

In a diversity case, a federal court ordinarily applies the choice-of-law rules of the state in which it sits.  Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941).  If a case is transferred to another district court under § 1404(a), the transferee district will apply the law that would have been applied had the case not been transferred.  Van Dusen v. Barrack, 376 U.S. 612, 639 (1964).  This has been adopted because a change of venue pursuant to § 1404(a) is simply "a change of courtrooms," and should not effect a change in the applicable law.  Id.  Therefore, Pennsylvania choice-of-law rules will apply regardless of whether this case is heard in the Eastern District of Pennsylvania or the Southern District of Ohio.

Pennsylvania uses a two-step process to resolve choice-of-law questions.  Blain, 240 F.R.D. at 192-93.  First, the court must determine whether there is a real conflict in the laws of each interested state that would affect the outcome of the case.  Id.  Second, if there is an actual, significant conflict, the court must decide which state has the greater interest in applying its law. Id.

Defendant contends that Pennsylvania choice-of-law rules dictate that Ohio law will apply to this case, and that transfer to Ohio will save this Court from applying unfamiliar law. (Doc. No. 11-2 at 16-18.)  Specifically, Defendant highlights that Ohio law recognizes a statutory cause of action in products liability cases that Pennsylvania law does not.  (Id. at 17); see Ohio Product Liability Act (OPLA), Ohio Rev. Code Ann. §§ 2307.71-801 (West 2014).  Defendant also notes that Ohio law, in certain circumstances, places limitations on the award of punitive damages against a pharmaceutical manufacturer that are not recognized under Pennsylvania law. (Doc. No. 11-2 at 17-18); see Ohio Rev. Code Ann. § 2307.80(C).  Defendant argues that "applying another state's unfamiliar substantive laws will create significant complexities at every

19

stage in this case, from potential preliminary objections through trial and perhaps even appeals." (Doc. No. 11-2 at 18.)

Plaintiffs characterize Defendant's argument as a "red herring," stating that the "Court has not determined which state's law to apply, nor has either party offered any evidence of briefing on the issue." (Doc. No. 19 at 10.)  Moreover, Plaintiffs argue, "both the Southern District of Ohio and the Eastern District of Pennsylvania are equally able to resolve any choice of law issues presented by Plaintiffs' claims." (Id.) (citing Kiser v. Conrail, No. 85-2011, 1985 U.S. Dist. LEXIS 16475, at *7 (E.D. Pa. Aug. 27, 1985).  Plaintiffs submit that, for these reasons, this factor is neutral. (Id.)

Plaintiffs' arguments are persuasive. The choice-of-law issue has not been fully briefed by the parties on this Motion to Transfer Venue.  It is therefore inappropriate, at this stage of the litigation, for the Court to conclusively determine which law will apply to this case.  Beyond that, the district court in either state is "more than capable" of applying another state's law. McCraw, 2014 WL 211343, at *7.  For these reasons, this factor is neutral in the Court's Jumara analysis.

### 3.  Balancing the **Jumara** Factors

After considering the parties' arguments, the Court finds that the Jumara factors weigh strongly in favor of transfer to the Southern District of Ohio.  Of the nine disputed Jumara factors, five weigh in favor of transfer, one weighs against transfer, and three are neutral.  This tally, though, is not determinative.  In deciding whether to transfer under § 1404(a), a court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." Jumara, 55 F.3d at 883.

20

Here, the Court finds (1) the fact that the Eastern District of Pennsylvania is not Plaintiffs' home forum, (2) convenience of witnesses, (3) where the claim arose, and (4) each forum's relative interest to be particularly persuasive factors that together weigh in favor of transfer.

First, Plaintiffs' choice of forum in the Eastern District of Pennsylvania is entitled to less deference in the Jumara analysis because it is not their home forum. See McCraw, 2014 WL 211343, at *4; McLaughlin v. GlaxoSmithKline, L.L.C., No. 12-3272, 2012 WL 4932016, at *3 (E.D. Pa. Oct. 17, 2012). Plaintiffs' choice is therefore due only diminished deference.

Second, Defendant has convincingly argued that it would not be able to compel the live testimony of Plaintiffs' physicians at trial in the Eastern District of Pennsylvania because they are outside the 100-mile subpoena radius of the District. This is an especially convincing point because these witnesses are critical to the case.

Third, the most significant operative facts of this case occurred in the Southern District of Ohio, not the Eastern District of Pennsylvania. See Blain, 240 F.R.D. at 193. As such, the Southern District of Ohio is the more appropriate venue.

Fourth, Ohio has an exceedingly strong interest in protecting its citizens from harm caused by out-of-state corporations. This interest outweighs any interest that Pennsylvania may have in regulating corporations within its borders. See McCraw, 2014 WL 211343, at *7; Blain, No. 06-1247, slip op. at 12 (E.D. Pa. Apr. 25, 2007); White, 2007 WL 1237952, at *6; Elwell, 2007 WL 1237957, at *6; Fisher, 2007 WL 1234845, at *6; Cunningham, No. 06-3022, slip op. at 12-13 (E.D. Pa. Apr. 25, 2007); Jaklevich, No. 06-3023, slip op. at 12 (E.D. Pa. Apr. 25. 2007).

On the force of these points, Defendant has carried its heavy burden to show that the Jumara factors weigh strongly in favor of transfer to the Southern District of Ohio.

21

## V.      CONCLUSION

For the reasons set forth above, the Court concludes that for the convenience of the parties and witnesses, and in the interest of justice, this case should be transferred to the United States District Court for the Southern District of Ohio.  Consequently, the Court will grant Defendant's Motion to Transfer Venue.

An appropriate Order follows.